UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
JEREMY PHILLIPS and KELLY CHADWICK,
Each Individually, and as Parent and Natural
Guardian of COURTNEY PHILLIPS and
SHELBY PHILLIPS,

                              Plaintiffs,

        -v-                                           1:06-CV-1292

PATRICIA DeANGELIS, Officially as District
Attorney of Rensselaer County and Unofficially
in her Individual Capacity; JOSEPH AHEARN;
WILLIAM ROBERTS; JOHN DOE, an unidentified
employee of Rensselaer County District Attorney,
in their Official and Unofficial Capacities;
RENSSELAER COUNTY; TROOPER MATTHEW
ZELL; and TROOPER ERIC LEONARD,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

WARREN REDLICH, ESQ.
Attorney for Plaintiffs
Suite 108
255 Washington Avenue Extension
Albany, New York 12205

NAPIERSKI, VANDENBURGH          SHAWN F. BROUSSEAU, ESQ.
 & NAPIERSKI, L.L.P.                   THOMAS J. O'CONNOR, ESQ.
Attorneys for Defendants DeAngelis, Ahearn,
 Roberts, Doe, and Rensselaer County
296 Washington Avenue Extension
Albany, New York 12203

HON. ANDREW M. CUOMO             ROGER W. KINSEY, ESQ.
Attorney General of the                  Asst. Attorney General
 State of New York
Attorney for Defendants Zell and Leonard
Department of Law
The Capitol
Albany, New York 12224

DAVID N. HURD
United States District Judge

## **MEMORANDUM-DECISION and ORDER**

## I. **INTRODUCTION**

Plaintiffs Jeremy Phillips ("Phillips") and Kelly Chadwick ("Chadwick"), individually and as parents of Courtney Phillips and Shelby Phillips (collectively "plaintiffs"), bring this action against Rensselaer County District Attorney Patricia DeAngelis ("DeAngelis"), First Assistant District Attorney Joseph Ahearn ("Ahearn"), Assistant District Attorney William Roberts ("Roberts"), Rensselaer County ("County") (collectively "County defendants"); and New York State Police Investigators Matthew Zell ("Zell") and Eric Leonard ("Leonard") (collectively "State defendants").

Plaintiffs assert the following causes of action under 42 U.S.C. § 1983: (1) malicious prosecution in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution against County and State defendants; (2) the application of excessive bail in violation of the Eighth Amendment against County defendants; (3) false arrest and imprisonment in violation of the Fourth, Fifth, and Fourteenth Amendments against County and State defendants; (4) denial of procedural due process in violation of the Fourteenth Amendment against County defendants; (5) denial of substantive due process in violation of the Fourteenth Amendment against County and State defendants; (6) loss of consortium against County and State defendants; and (7) punitive damages against the County.[1]

---

[1] To clarify, plaintiffs' request for punitive damages is a form of relief sought, not a separate cause of action. In any event, the United States Supreme Court has ruled that, as a matter of public policy, a municipality may not be held liable for punitive damages under § 1983 because innocent

(continued...)

County defendants move to dismiss and for summary judgment pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure 56. Plaintiffs oppose. State defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiffs oppose. Plaintiffs cross-move for summary judgment pursuant to Federal Rule of Civil Procedure 56. County and State defendants oppose.

Oral argument was heard on January 25, 2008, in Albany, New York. Decision was reserved.

## II. FACTS

In October 2003, Phillips was hired as a manager at an Advantage Auto Parts ("Advantage") store in Wynantskill, New York. In January 2004, Gary Betts ("Betts"), the district manager for Advantage, discovered that nearly $7,000 dollars were missing from the Wynantskill store. Suspecting Phillips of theft, Betts terminated his employment and reported the matter to the New York State Police ("State Police").

State Police Trooper Scott Schriner, not a defendant in this action, took Betts's statement and forwarded the case to the Bureau of Criminal Investigation ("BCI"). State Police Investigator Dennis Martinez, also not a defendant in this action, was assigned to the case in February 2004 and re-interviewed Betts.

In January 2005, defendant Zell was assigned to the case. Zell contacted Advantage's attorney to confirm that Advantage wanted to proceed with a criminal investigation. Advantage's attorney advised Zell that it did, and that Ralph Fiacco ("Fiacco"),

---

[1](...continued)
taxpayers are the ones punished by such an award. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 267-71, 101 S. Ct. 2748, 2759-62 (1981); Ciraolo v. City of New York, 216 F.3d 236, 238-40 (2d Cir. 2000).

the company's auditor, would gather documentation regarding the incident.  In May 2005, Zell interviewed Fiacco and Joseph Fazekas ("Fazekas"), the new district manager, and collected accounting statements showing that deposits were missing that were recorded as having been made.  Zell also interviewed Phillips's coworker Kathleen Knauer ("Knauer"), who told him that Phillips was responsible for making deposits and that he had changed her working hours so that he could be alone in the store.

Zell applied for an arrest warrant for Phillips on July 17, 2005, at the Town of North Greenbush Court.  The application Zell submitted to the Town Justice consisted of (1) the criminal complaint alleging larceny, and (2) the written statement of Gary Betts.  Shortly thereafter, the North Greenbush Town Justice issued a warrant for Phillips's arrest; however, the warrant was not executed because of some confusion as to Phillips's whereabouts.

In February 2006, Leonard was assigned to the case.  Leonard re-interviewed Knauer and Fiacco.  Leonard also reviewed the felony complaint, case notes, Betts's statement, and the arrest warrant.  After learning that Phillips might be residing in Streamwood, Illinois, Leonard contacted the Rensselaer County District Attorney's Office by telephone to ask about extraditing Phillips from Illinois.  Defendant Roberts told Leonard to contact him again if Phillips could be located.  After confirming that Phillips was located in Illinois in March 2006, Leonard contacted Roberts.  Leonard faxed the felony complaint and arrest warrant, along with supporting paperwork which implicated Phillips.  Roberts made a determination that probable cause existed to prosecute Phillips for larceny because he was the sole custodian of the missing deposits.  Roberts also contacted Zell concerning a speedy trial and other details of the case.  Roberts then met with his supervisor, defendant Ahearn, and ultimately decided to prosecute Phillips.  Roberts then contacted Leonard and told him

that the District Attorney's office would be willing to prosecute Phillips in New York if he was arrested in Illinois. Accordingly, Leonard contacted the Streamwood Police Department and asked that Phillips be arrested on the New York warrant.

Pursuant to Leonard's request, the Streamwood Police took Phillips into custody on March 8, 2006. While in custody and with the benefit of assigned counsel, Phillips signed a form entitled "WAIVER OF EXTRADITION" which recited as follows:

> I, Phillips, Jeremy, now in the custody of the Sheriff of Cook County, Illinois, and having been produced by the said Sheriff before the Presiding Judge of the Criminal Division, do hereby waive my rights to demand the issuance and service of a warrant of extradition and to apply for a writ of habeas corpus against my present detention, and to all other procedures incidental to extradition. I freely and voluntarily agree to return (go) to the county of Rensselaer, State of New York, accompanied by an agent thereof, for the purpose of answering the charge(s) of theft ($6,442.00 USC), there pending against me.

(Ahearn Aff. Ex. N.) Twenty days after signing the form, Phillips was returned to New York. Phillips was arraigned in the Town of North Greenbush Court with bail set at $5,000 cash or bond. The charges against Phillips were dismissed when the Grand Jury found there was no reasonable cause to proceed and issued a No True Bill of indictment.

## III. STANDARD OF REVIEW

### A. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2510 (1986); Richardson v. New York State Dep't of Corr. Servs., 180 F.3d 426, 436 (2d Cir. 1999); Lang v. Retirement Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991). The moving

party carries the initial burden of demonstrating an absence of a genuine issue of material fact.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990).  Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); Richardson, 180 F.3d at 436; Project Release v. Prevost, 722 F.2d 960, 968 (2d Cir. 1983), and pleadings of a pro se litigant must be construed liberally, Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972); Nance v. Kelly, 912 F.2d 605 (2d Cir. 1990).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356.  At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; Liberty Lobby, Inc., 477 U.S. at 250, 106 S. Ct. at 2511; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.  To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 1510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

### B.  Rule 12(b)(6) Standard

On a motion to dismiss, the allegations in the complaint are accepted as true.  See Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998).  A cause of action will be dismissed for failure to state a claim under Rule 12(b)(6), only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).  In reviewing the

sufficiency of a complaint at the pleading stage, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974).

## IV.  DISCUSSION

### A.  False Arrest

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const. amend. IV.  An unreasonable seizure of a person in the form of a false arrest constitutes a violation of the Fourth Amendment and is actionable under 42 U.S.C. § 1983.  The elements of false arrest under § 1983 are substantially similar to the elements of false arrest under New York law.   The plaintiff must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994); see Savino v. City of New York, 331 F.3d 63, 75-76 (2d Cir. 2003); Broughton v. State, 37 N.Y.2d 451, 456-57 (1975).  No cause of action for false arrest will lie where the arrest was effected pursuant to an arrest warrant.  Broughton, 37 N.Y.2d at 457.  The proper claim in that instance is a malicious prosecution claim.  See id.

Since Phillips was arrested pursuant to an arrest warrant, his false arrest claim cannot lie.  See id.  While plaintiffs contend that the arrest warrant was issued without probable cause, it was facially valid, which means that a malicious prosecution claim, not a false arrest claim, is the proper vehicle for relief.  Plaintiffs have indeed asserted a malicious prosecution claim and it will be addressed next.

- 7 -

Therefore, County and State defendants' motions for summary judgment on plaintiffs' false arrest claim will be granted.  Conversely, plaintiffs' cross-motion for summary judgment on that claim will be denied.

### B. Malicious Prosecution

As stated above, the Fourth Amendment protects citizens against unreasonable seizures, including malicious prosecution.  See U.S. Const. amend. IV; Broughton, 37 N.Y.2d at 457.  To make out a claim for malicious prosecution, the plaintiff must show:  (1) an initiation or continuation of criminal proceedings by the defendant; (2) the proceeding was initiated without probable cause; (3) the proceeding was commenced with malice; and (4) the proceeding terminated in the plaintiff's favor.  Ricciuti v. N.Y. City Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997); Martin v. City of Albany, 42 N.Y.2d 13, 16 (1977).  Additionally, the plaintiff must also show that he suffered "a sufficient post-arraignment liberty restraint to implicate [his] Fourth Amendment rights." Rohman v. N.Y. City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000).

State defendants move for summary judgment on plaintiffs' malicious prosecution claim on the grounds that (1) plaintiffs have failed to show that they initiated or continued the prosecution, (2) the prosecution was initiated without probable cause, and (3) alternatively, they are entitled to qualified immunity.  County defendants move for summary judgment on plaintiffs' malicious prosecution claim on the grounds that they are entitled to both absolute and qualified immunity.  And plaintiffs cross-move for summary judgment on the malicious prosecution claim on the ground that they have satisfied all the elements of that claim.

### 1. Initiation or Continuation of Criminal Prosecution

The requirement that a plaintiff show an initiation or continuation of a criminal proceeding by the defendant may be satisfied by a showing that the defendant filed formal charges and caused the plaintiff to be arraigned.  See Ricciuti, 124 F.3d at 130; Cook v. Sheldon, 41 F.3d 73, 79 (2d Cir. 1994); Damiano v. City of Amsterdam, 466 F. Supp. 2d 456, 463 (N.D.N.Y. 2006).

In this case, plaintiffs have shown that Zell filed formal larceny charges against Phillips, and Leonard effected the arrest.  Zell initiated the criminal proceedings by submitting the July 17, 2005, criminal complaint naming Phillips.  Leonard continued the criminal proceedings by locating Phillips, and effecting his arrest.  Thus, plaintiffs have satisfied the first element of the malicious prosecution claim with regard to State defendants.

State defendants' argument that County defendants' indirect actions broke the causal chain between their actions and the prosecution has no merit because it is based on Stephenson v. Rosa, No. 03-CV-8503, 2006 WL 464081, at *3 (S.D.N.Y. Feb. 24, 2006), which is based on an incorrect reading of White v. Frank, 855 F.2d 956, 962 (2d Cir. 1988). The White court merely held that "[t]he exercise of independent judgment by the public prosecutor and his active role in initiating the criminal prosecutions may decrease the likelihood that a complaining witness will be considered to have 'caused' or 'procured' the prosecution, thus defeating grounds for liability under this initial prong of the common law standard."  Id. at 962.  The holding of the White court is inapposite here because State defendants were not merely complaining witnesses but made the independent decision to instigate the criminal proceeding.

County defendants do not contest the elements of the malicious prosecution claim but rely on the affirmative defenses of absolute and qualified immunity.  County defendants

continued the criminal proceedings by initiating Phillips's arraignment before the Town of North Greenbush Town Justice on April 5, 2006. Subsequently, County defendants commenced Grand Jury proceedings on September 21 and 26, 2006. Plaintiffs have shown that the arraignment, and presentation before the grand jury, clearly meet the requirement of a continuation of criminal proceedings by County defendants.

Therefore, the element of initiation or continuation of the criminal prosecution is satisfied with regard to both State and County defendants.

### 2. **Absence of Probable Cause**

Probable cause to prosecute exists when the facts possessed by the officer are sufficient to warrant a prudent person in believing that the suspect could be successfully prosecuted. Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003); Posr v. Court Officier Shield No. 207, 180 F.3d 409, 417 (2d Cir. 1999); Rounseville v. Zahl, 13 F.3d 625, 629 (2d Cir. 1994). In evaluating these matters, only those facts available at the time of the initiation of the prosecution are considered. See Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996). Facts that become available to the officer after the initiation, whether they confirm of belie the existence of probable cause, are irrelevant to the inquiry. Id. An officer is allowed to reasonably rely on a fellow officer's determination concerning the legality of an arrest and initiation of a prosecution. Loria v. Gorman, 306 F.3d 1271, 1288 (2d Cir. 2002). "[T]he determination of probable cause does not turn on whether [the fellow agent's] observations were accurate, but on whether [the arresting agent] was reasonable in relying on those observations." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (quoting Bernard v. United States, 25 F.3d 98, 102-03 (2d Cir.1994)). Normally, an arrest warrant issued from a neutral magistrate creates the presumption of probable cause. See U.S. v.

Ventresca, 380 U.S. 102, 109, 85 S. Ct. 741, 746 (1965); Golino v. City of New Haven, 950 F.2d 864, 874 (2d Cir. 1991).

Plaintiffs argue that Zell did not have a basis for probable cause to initiate the criminal prosecution. Zell based his determination of probable cause on the interviews of Betts, Fazekas, and Fiacco, and paperwork concerning the missing deposits, each of which implicated Phillips in the incident. Fiacco and Fazekas provided accounting statements showing deposits were missing that were recorded as having been made. Zell used the documentation and interviews to base his determination that Phillips failed to make deposits and had reported fraudulent returns. Additionally, Zell also reviewed the written statement of Betts, and interviewed Phillips's coworker Kathleen Knauer. When interviewed by Zell, Knauer said that Phillips had changed her working hours so that he could be alone in the store. She also indicated that she was not the one responsible for making deposits  In light of the totality of the evidence, Zell had a sufficient basis of probable cause to initiate the prosecution.

Similarly, Leonard had a sufficient basis for a finding of probable cause to continue the prosecution. Leonard based his finding of probable cause upon his review of the felony complaint, case notes, the statement of Betts, and his reasonable reliance on Zell's previous determination of probable cause. See Panetta, 460 F.3d at 395. Additionally, and perhaps most importantly, Leonard relied upon a facially valid arrest warrant which, as stated above, creates a presumption of probable cause. See Golino, 950 F.2d at 874.

County defendants also had probable cause to continue the prosecution at the time Roberts approved the extradition. County defendants based their finding of probable cause upon a reasonable reliance on State defendants' prior determinations of probable cause to

arrest, and the warrant paperwork. After Leonard initially contacted the District Attorney's office, he faxed the felony complaint and arrest warrant, along with the supporting depositions. Roberts determined that probable cause existed to prosecute Phillips for larceny because he was the sole custodian of the missing deposits. Roberts then contacted Zell concerning the details of the case. Roberts relayed a synopsis of the case to his supervisor Ahearn and ultimately decided to prosecute Phillips.

In conclusion, plaintiffs have failed to establish the requisite absence of probable cause to prosecute in regards to State and County defendants. As a matter of law, both State and County defendants had probable cause to prosecute. Thus, the malicious prosecution claims fails due to the existence of probable cause to prosecute.

### 3. Remaining Elements and Defenses

While the existence of probable cause renders the discussion of the remaining elements and defenses academic, it is worth noting that had plaintiffs at least raised a question of fact as to the existence of probable cause, they likely would have survived summary judgment on the element of malice. In New York, the lack of probable cause and malice are considered closely related elements and therefore the existence of malice may be inferred from a lack of probable cause. Id. at 631; Damiano, 466 F. Supp. 2d at 463-64. Therefore, if plaintiffs had raised questions of material fact as to the existence of probable cause, then they likely would have also raised questions of material fact as to the existence of malice. Damiano, 466 F. Supp. 2d at 464.

As to the fourth element, "[t]he requirement that a plaintiff show . . . a favorable termination is designed principally to ensure against inconsistent judgments, and to avoid parallel litigation as to questions of probable cause." Damiano, 466 F. Supp. 2d at 464

(citing Murphy, 118 F.3d at 948).  The return of No True Bill by a grand jury is a termination in the plaintiff's favor.  Pritzker v. City of Hudson, 26 F. Supp. 2d 433, 442 (N.D.N.Y. 1998).  In this case, the Grand Jury returned No True Bill.  Therefore, as a matter of law, the fourth element is satisfied.  Pritzker, 26 F. Supp. 2d at 442.

Similarly, a discussion of State and County defendants' defenses is unnecessary in light of the failure of the malicious prosecution claim.  However, even if the plaintiffs made out a prima facie case of malicious prosecution, State and County defendants would be entitled to the defense of qualified immunity.

"[Q]ualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Kerman v. City of New York, 374 F.3d 93, 108 (2d Cir. 2004) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)).  An official's liability depends on the objective reasonableness of his actions, which is considered in light of clearly established law and the circumstances confronted.  See Saucier v. Katz, 533 U.S. 194, 199-200, 121 S. Ct. 2151, 2155 (2001).  A right is clearly established when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violated that right." Id. at 202, 121 S. Ct. at 2156.

Zell's belief that he was not violating Phillips's clearly established constitutional rights was objectively reasonable even if there was no probable cause to prosecute.  Zell relied on the interviews of Betts, Fazekas, Fiacco, and Knauer.  Zell also took into consideration the documentation produced by the company that showed deposits were missing that were recorded as having been made.  Therefore, Zell was reasonable in

believing that his conduct did not violate Phillips's constitutional rights regardless of whether there was probable cause to prosecute.

Leonard was also objectively reasonable in that belief, especially since he relied on the facially valid arrest warrant. Leonard also reviewed the felony complaint, case notes, and the supporting deposition of Betts.

For similar reasons, County defendants would also be entitled to qualified immunity. However, County defendants would not be entitled to absolute immunity if plaintiffs made out a case for malicious prosecution. Absolute immunity protects officials, such as prosecutors, from a lawsuit if they perform "special functions" that are "intimately associated with the judicial phase of the criminal process," while acting as a state advocate. Bernard, 356 F.3d at 502 (quoting Imbler v. Pachtman, 424 U.S. 409, 430-31, 96 S. Ct. 984, 995 (1976)); Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995). The test for absolute immunity looks to the function being performed, as opposed to the identity of the office. Hill, 45 F.3d 660. Therefore, prosecutors may only invoke absolute immunity as to actions within their prosecutorial role in the judicial process, Buckley v. Fitzsimmons, 509 U.S. 259, 269, 113 S. Ct. 2606, 2613 (1993); Bernard, 356 F.3d at 503; Hill, 45 F.3d at 660, that is to say, prosecutors do not receive absolute immunity for actions outside the scope of their role, such as giving legal advice to the police or assisting in an arrest, Hill, 45 F.3d at 661.

County defendants acted in their investigatory role when they contacted Leonard and told him that the District Attorney's office would be willing to prosecute Phillips if he were to be arrested in Illinois and extradited to New York. At that time, County defendants were assisting the State Police in the arrest/extradition process and, therefore acted outside of

their role as prosecutors. Therefore, County defendants would not be entitled to rely on the defense of absolute immunity if plaintiffs made out a malicious prosecution claim.

In any event, State and County defendants have shown that, as a matter of law, they had probable cause to prosecute. Therefore, State and County defendants' motion for summary judgment on plaintiffs' malicious prosecution claim will be granted, and plaintiffs' cross-motion for summary judgment will be denied.

### C. Due Process

The Fourteenth Amendment provides, in relevant part, that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Two constitutional doctrines emerge from the Due Process Clause: procedural due process, and substantive due process. Plaintiffs assert claims under both of those doctrines and all parties move for summary judgment with regard thereto.

#### 1. Procedural Due Process

Plaintiffs claim that Phillips's procedural due process rights under the Fourteenth Amendment were violated by County defendants' failure to comply with extradition proceeding requirements under the New York Criminal Procedure Law § 570.54. County and State defendants move for summary judgment on the ground that Phillips freely and voluntarily waived his due process rights during extradition.

A person may bring a procedural due process claim in federal court under § 1983 if deprived of a protected interest without due process of law by a person acting under color of state authority. See 42 U.S.C.A. § 1983. The fundamental requirement of procedural due process is "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 902 (1976) (quoting Armstrong v.

Manzo, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191 (1965)).  While, an individual may waive his constitutional right to procedural due process, see, e.g.,  Hinton v. Moritz, 11 F. Supp. 2d 272, 275 (W.D.N.Y. 1998) (citing Siegel v. Edwards, 566 F.2d 958, 960 (5th Cir. 1995) (fugitive cannot recover under § 1983 for rights deprived during extradition after waiving extradition rights)),  there exists a reasonable presumption against the waiver of a constitutional right, that may be overcome by showing clear and intentional relinquishment, Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023 (1938); Doe v. Marsh, 105 F.3d 106, 111 (2d Cir. 1997).

On March 8, 2006, Phillips was arrested in Streamwood, Illinois pursuant to the arrest warrant issued by the Town of North Greenbush Town Justice.  While in custody in Cook County, Phillips freely and voluntarily signed a waiver of extradition form after meeting with assigned counsel on March 17, 2006.  The form contained a provision which stated the signor waived " . . . all other procedures incidental to extradition."  Plaintiffs have not introduced any evidence to contradict the fact that Phillips freely and voluntarily signed the waiver form.  Therefore, plaintiffs' procedural due process claim is barred.  Furthermore, a violation of the New York Criminal Procedure Law § 570.54 is not a conclusive violation of procedural due process under the Fourteenth Amendment, but merely evidence of a violation.  Therefore, State and County defendants' motion for summary judgment will be granted with respect to the denial of procedural due process claim.  Also, plaintiffs' motion for summary judgment on that claim will be denied.

### 2. Substantive Due Process

Substantive due process protects against government conduct that deprives people of protected rights and truly "shocks the conscience" of the court, County of Sacromento v.

Lewis, 523 U.S. 833, 834, 118 S. Ct. 1708, 1710 (1998) (citing Rochin v. California, 342 U.S. 165, 172-73, 72 S. Ct. 205, 209-10 (1952)), or is "so outrageously arbitrary as to constitute a gross abuse of governmental authority," Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999); see also Lewis, 523 U.S. at 846, 118 S. Ct. at 1716 (substantive due process only protects against "the most egregious official conduct").  However, "[w]here a particular constitutional amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 273, 114 S. Ct. 807, 813 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871 (1989)); see Bryant v. City of New York, 404 F.3d 128, 135-36 (2d Cir. 2005).

In this case, plaintiffs' substantive due process claim is based upon events surrounding Phillips's arrest. Since the Fourth Amendment provides an explicit textual source for the specific constitutional protection in question, plaintiffs' substantive due process claim under the Fourteenth Amendment is improper, and will be dismissed. Thus, the defendants' motion for summary judgment in regard to the denial of substantive due process will be granted. Conversely, plaintiffs' motion for summary judgment on that claim will be denied.

### E. Excessive Bail

Plaintiffs' excessive bail claim, which is directed against County defendants, is based on their allegedly malicious refusal to consent to bail after his extradition to New York. The Eighth Amendment states that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

As discussed above, absolute immunity is available to prosecutors when they act within their prosecutorial role in the judicial process. Buckley, 509 U.S. at 269, 113 S. Ct. at 2613; Bernard, 356 F.3d at 503; Hill, 45 F.3d at 660. Prosecutors act within their prosecutorial roles during bail hearings. Smith v. Garretto, 147 F.3d 91, 94 (2d Cir. 1998); see Pinaud, 52 F.3d at 1149. Therefore, as a matter of public policy, County defendants are absolutely immune from suit with respect to plaintiffs' claim of excessive bail. Thus, County defendants' motion for summary judgment on the excessive bail claim will be granted and plaintiffs' cross-motion for summary judgment on that claim will be denied.

### F. Remaining Claims

Loss of consortium is a derivative claim that is not independently cognizable under § 1983. Wahhab v. City of New York, 386 F. Supp. 2d 277, 292 (S.D.N.Y. 2005); Pritzker v. City of Hudson, 26 F. Supp. 2d 433, 445 (N.D.N.Y. 1998); Stanley v. City of New York, 587 F. Supp. 393, 396 (E.D.N.Y. 1984). In the absence of a cognizable § 1983 claim, the derivative claim is dismissed. Simons v. New York, 472 F. Supp. 2d 253, 268 (N.D.N.Y. 2007). Similarly, claims based on municipal liability under Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 98 S. Ct. 2018 (1978), cannot stand without an underlying constitutional violation. Since plaintiffs' false arrest, malicious prosecution, due process, and excessive bail claims will be dismissed, so too will plaintiffs' loss of consortium and Monell claims.

Accordingly, it is

ORDERED that

1. State defendants' motion for summary judgment is GRANTED;

2. County defendants' motion for summary judgment is GRANTED;

3.  Plaintiffs' cross-motion for summary judgment is DENIED; and

4.  The complaint is DISMISSED in its entirety;

IT IS SO ORDERED.

The Clerk of the Court is directed to file a judgment accordingly.

Dated: August 12, 2008
       Utica, New York.

_____
United States District Judge